# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE PRUDE,<br><br>                Plaintiff,<br><br>v.<br><br>COLIN FRUEHBRODT, ANDREW WICKMAN, STEVEN SCHUELER, and DYLON RADTKE,<br><br>                Defendants. | Case No. 19-CV-1203-JPS<br><br>**ORDER** |

      Plaintiff Terrance Prude, a prisoner proceeding in this matter *pro se*, filed a complaint alleging that Defendants violated his constitutional rights. (Docket #1). On January 13, 2020, the Court screened the complaint and allowed Plaintiff to proceed on claim of retaliation in violation of the First Amendment against Defendants Colin Fruehbrodt, Andrew Wickman, and Steven Schueler. (Docket #13). Additionally, the Court allowed Plaintiff to proceed on an *Ex Parte Young* official capacity claim against Defendant Warden Dylon Radtke for the sole purpose of carrying out the injunctive relief Plaintiff requests, which is expungement of a conduct report from his record. (*Id.*)

      On June 3, 2020, Plaintiff filed a motion for summary judgment. (Docket #22). On July 6, 2020, Defendants filed a combined motion for summary judgment and brief in response to Plaintiff's summary judgment motion. (Docket #28). These motions have been fully briefed, and for the reasons explained below, Defendants' motion for summary judgment will be granted.

1.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Internal inconsistencies in a witness's testimony "create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1170 (7th Cir. 1996) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). The non-movant "need not match the movant witness for witness, nor persuade the court that [its] case is convincing, [it] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

2.  **RELEVANT FACTS**

On December 6, 2018, Plaintiff was transferred to Green Bay Correctional Institution ("GBCI"), which is where the relevant events took

place. (Docket #30 at 1). Defendants are either current or former employees of GBCI. (*Id.* at 2). Defendant Colin Fruehbrodt ("Fruehbrodt") is a Correctional Officer ("CO"). (*Id.*) Defendant Andrew Wickman ("Wickman") is a lieutenant or supervising officer, who also sometimes serves as the hearing officer for inmates' due process hearings on disciplinary conduct reports for prison rule violations. (*Id.*) Defendant Steven Schueler ("Schueler") was the Deputy Warden until he retired on April 30, 2019. (*Id.* at 3). Defendant Dylon Radtke ("Radtke") is the current Warden at GBCI, and he is sued in his official capacity solely to carry out any order for injunctive relief. (*Id.*)

Plaintiff's claim arises out of events that occurred in GBCI's Restrictive Housing Unit on February 23, 2019. (*Id.* at 3–4). On that date, Plaintiff was getting his hair cut outside of his cell. (*Id.* at 4). During the haircut, Fruehbrodt and non-defendant CO Joshua Gomm ("Gomm") searched Plaintiff's cell. (*Id.*) During his search of Plaintiff's cell, Fruehbrodt discovered a peanut butter jar containing liquid, which he believed was in violation of Wis. Admin. Code DOC § 303.55,[1] the rule about improper storage, because the jar was being used to store a substance other than its original contents. (*Id.*) Fruehbrodt also believed that the jar could be used in a manner that may jeopardize staff safety (i.e. filled with urine and feces and thrown at staff). (*Id.*)

Fruehbrodt removed the jar from the cell, stating that Plaintiff would receive a disciplinary conduct report for the rule violation. (*Id.*) Officers

---

[1]"**Improper storage.** Any inmate shall keep toiletries, hobby materials, medications, cleaning supplies, food and any other items in the original containers, and in a designated area. Any inmate who stores any of these items in a different container or in an unauthorized area is guilty of improper storage."

Gomm, Matushak, and Fruehbrodt, as well as the barber and all of the inmates on the tier, heard the exchange that followed between Plaintiff and Fruehbrodt. (*Id.* at 5). Plaintiff asked why Fruehbrodt would write a ticket and demanded that Fruehbrodt prove what rule Plaintiff was breaking. (*Id.*) Plaintiff testified at his deposition, "I kept telling him to show me the policy, point it out to me," and "I was telling him, 'What page is it on that me putting water in an empty peanut butter container is improper storage? Show me where it say that in this handbook that I got in my cell.'" (*Id.*) Fruehbrodt got a copy of the prison rule book, Wisconsin Administrative Code Chapter DOC 303, and showed Plaintiff the rule. (*Id.*)

Plaintiff disagreed with Fruehbrodt's interpretation of the rule and told Fruehbrodt it was "an asshole interpretation of the policy, that that was an asshole way of looking at the policy." (*Id.*) Fruehbrodt told Plaintiff to take it up with the hearing officer at his due process hearing on the disciplinary charge. (*Id.*) Plaintiff claims that he said, "No, I'm gonna go outside the institution and take my issue up with the DOC secretary, take this issue up with the DOC secretary." (*Id.* at 8). Defendants dispute this and instead state Plaintiff told Fruehbrodt that he was going to contact "people on the outside." (Docket #29 at 11). Fruehbrodt took Plaintiff's statement as a threat to intimidate him, so he added a charge of threats to the conduct report. (*Id.*) Based on the incident with Plaintiff, Fruehbrodt wrote Conduct Report #3057 ("Conduct Report"), with charges including threats, disrespect, disruptive conduct, and improper storage. (Docket #30 at 9).

Plaintiff exercised his right to contest the Conduct Report charges, and on March 11, 2019, he received a full due process hearing. (*Id.* at 11). Wickman was the hearing officer, and after reviewing the evidence and

testimony of the witnesses, Wickman found Plaintiff guilty of threats and disrespect, as it was more likely than not that Plaintiff called staff derogatory names and made statements meant to intimidate or cause physical harm to staff. (*Id.* at 13). Additionally, Wickman found Plaintiff not guilty of improper storage, as the evidence showed that Plaintiff had not been provided with a cup for water in his cell. (*Id.* at 14). Wickman sentenced Plaintiff to 60 days of disciplinary separation. (*Id.*) Plaintiff appealed the disposition, and Deputy Warden Schueler affirmed Wickman's decision on April 2, 2019. (*Id.*)

**3.   ANALYSIS**

Plaintiff was permitted to proceed on a claim of retaliation in violation of the First Amendment against Defendants Fruehbrodt, Wickman, and Schueler. (Docket #13). Additionally, the Court allowed Plaintiff to proceed on an *Ex Parte Young* official capacity claim against Defendant Warden Radtke for the sole purpose of carrying out the injunctive relief Plaintiff requests, which is expungement of the Conduct Report from his record. Defendants allege that Plaintiff's retaliation claim fails because his threat to Fruehbrodt was not protected by the First Amendment. Additionally, Defendants argue that even if Plaintiff's threat to file a grievance is protected by the First Amendment, Defendants are entitled to qualified immunity.

**3.1   Retaliation Claim**

At the summary judgment stage, the plaintiff has the initial burden to make out a prima facie case of First Amendment retaliation by showing that, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to

impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). If the plaintiff meets this burden, "the burden shifts to the defendant to rebut the causal inference created by the plaintiff's showing and to prove that it would have taken the same action regardless of the plaintiff's protected activity." *Brock v. City of Belleville*, No. 17-CV-218-JPG-SCW, 2018 WL 2320511, at *7 (S.D. Ill. May 22, 2018). Then, "[i]f the defendant is successful in rebutting the plaintiff's prima facie case . . . the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was pretextual and that the real reason was retaliatory animus." *Id.* Essentially, the plaintiff must show that "the defendant's proffered reason is a lie." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

### 3.1.1 Activity Protected by the First Amendment

Plaintiff has the burden to show that his threat to file a grievance is protected by the First Amendment. However, the Court need not reach the question of whether Plaintiff's threat was protected First Amendment activity because the Court finds that Defendants Fruehbrodt, Wickman, and Schueler are entitled to qualified immunity.

### 3.2 Qualified Immunity

The qualified immunity doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Put simply," says the Supreme Court, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once the defense is raised, the

plaintiff bears the burden to defeat it. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015).

To determine the applicability of qualified immunity at the summary-judgment stage, a court must engage in a two-part analysis. First, to overcome an assertion of qualified immunity, the plaintiff must first proffer facts which, if believed, amount to an actual violation of his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Easterling v. Pollard*, 528 F. App'x 623, 656 (7th Cir. 2013). Next, the plaintiff must show that the violation of his constitutional rights was "clearly established under applicable law at the time and under the circumstances that the defendant official acted." *Easterling*, 528 F. App'x at 656 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A right is clearly established when its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alterations omitted). Courts should "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court recently emphasized "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017). The "clearly established law" must instead "be particularized to the facts of the case." *Id.*

Defendants assert they are entitled to qualified immunity because it is not clearly established that threatening to file a grievance is protected by the First Amendment. Plaintiff argues that Defendants are not entitled to qualified immunity because even without current precedent, this is a rare

Page 7 of 11
Case 2:19-cv-01203-JPS   Filed 03/16/21   Page 7 of 11   Document 45

"obvious case" where everyone should have known that issuing Plaintiff a conduct report would violate his constitutional rights.

Plaintiff has failed to meet his burden as to prong two of this analysis.[2] "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle*, 566 U.S. at 664. To defeat a defense of qualified immunity, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

In this case, Fruehbrodt, Wickman, and Schuler are entitled to qualified immunity unless it would have been clear to reasonable officials in their positions that their actions constituted deliberate indifference under Supreme Court or Seventh Circuit precedent. *See Pearson*, 555 U.S. at 236; *Saucier*, 533 U.S. at 201. The Supreme Court and the Seventh Circuit have yet to definitively decide whether a threat to file a grievance is itself protected under the First Amendment. Therefore, Defendants are entitled to qualified immunity in this case.

Moreover, the Seventh Circuit has expressed doubt that such threats are protected. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment protected grievance") (emphasis in original). Since *Bridges*, the

---

[2]Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. In this case, the Court will begin with prong two—whether the constitutional right was clearly established at the time of the alleged violation. *See id.* ("In some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all.").

Page 8 of 11
Case 2:19-cv-01203-JPS   Filed 03/16/21   Page 8 of 11   Document 45

Seventh Circuit has affirmed the dismissal of retaliation claims based on threats to engage in protected activity. In a nonprecedential decision in 2017, the Seventh Circuit affirmed the dismissal of a prisoner's complaint at screening, stating—among other reasons—that "merely *threatening* to file a grievance against someone is not protected activity." *Davenport v. Szczepanski*, 704 F. App'x 602, 603, 2017 WL 6033040 (7th Cir. 2017) (emphasis in original) (citing *Bridges*, 557 F.3d at 555). In addition, the Seventh Circuit found that qualified immunity shielded a prison official against an inmate's claim that the prison official retaliated against him for an oral threat to file a grievance. *Clark v. Reed*, 772 F. App'x 353, 355, 2019 WL 2714611 (7th Cir. 2019) (nonprecedential decision).

After *Bridges* and *Davenport*, district courts in the Seventh Circuit have concluded that a prisoner's threat to engage in a First Amendment protected activity is not itself protected by the First Amendment. *See Knight v. Tate*, No. 20-CV-2086-JBM, 2020 WL 3547932, at *2 (C.D. Ill. June 30, 2020) ("[W]hile [First Amendment] protections apply to the filing of complaints and grievances, they do not apply to the mere threat of filing a complaint or grievance."); *Comi v. Zeiger*, No. 20-CV-3091-JBM, 2020 WL 3489989, at *2 (C.D. Ill. June 26, 2020) (dismissing the complaint at screening for failure to state a claim for retaliation based on a threat to file a grievance); *Coleman v. Vinson*, No. 3:15-CV-898-RJD, 2018 WL 4489351, at *3 (S.D. Ill. Sept. 19, 2018) ("Although this point has not been definitively decided by the Seventh Circuit, … the Court finds that the mere threat to file a grievance does not constitute a First Amendment activity with the protections that are afforded therein.") (citation omitted); *Merritte v. Godinez*, No. 3:15-CV-254-SMY-RJD, 2018 WL 4224236, at *8 (S.D. Ill. Aug 16, 2018) (same); *Price v. Sanders*, No. 17-CV-00052-MJR, 2017 WL 2418791, at *7 (S.D. Ill. June 5, 2017) ("Plaintiff's

comments regarding his intent to file a grievance cannot be a basis for a retaliation claim and this claim shall be dismissed with prejudice.").

Therefore, in the Seventh Circuit, there are no binding precedential cases, reports, or regulations, putting Defendants on notice that issuing Plaintiff a conduct report for his threat to file a grievance violated the First Amendment. Indeed, the weight of the authority in this circuit is to the contrary, expressing doubt that a threat to engage in First Amendment activity is itself protected by the First Amendment. In light of these cases, Plaintiff has not and cannot provide a case in this circuit that demonstrates that this is a rare "obvious case" where everyone should have known that issuing Plaintiff a conduct report would violate his constitutional rights. Thus, the Court finds that Defendants Fruehbrodt, Wickman, and Schueler are entitled to qualified immunity in this case.

### 3.3 Defendant Warden Dylon Radtke

The Court allowed Plaintiff to proceed on an *Ex Parte Young* official capacity claim against Defendant Warden Radtke for the sole purpose of carrying out the injunctive relief requested, which is expungement of the Conduct Report from Plaintiff's record. As the Court has found that all other Defendants are entitled to qualified immunity in this case, the Court will also dismiss the claim against Defendant Warden Radtke. Because there is no constitutional violation, no injunctive relief is warranted. Therefore, the Court will grant Defendants' motion for summary judgment and dismiss this case with prejudice.

### 4. CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment, (Docket #28), will be granted and the case dismissed with

Page 10 of 11
Case 2:19-cv-01203-JPS    Filed 03/16/21    Page 10 of 11    Document 45

prejudice. Accordingly, the Court will deny Plaintiff's motion for summary judgment, (Docket #22), as moot.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #28) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket #22) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge